# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LEVITON MANUFACTURING CO., INC.,

      Plaintiff,

vs.                                                                 No. CIV 04-0424 JB/LFG

NICOR, INC., d/b/a NICOR LIGHTING & FANS,

      Defendant,

ZHEJIANG DONGZHENG ELECTRICAL CO., LTD.,

      Defendant/Intervenor.

   and

LEVITON MANUFACTURING CO., INC.

      Plaintiff,

vs.                                                                 No. CIV 04-1295 JB/ACT

HARBOR FREIGHT TOOLS USA, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Partial Summary Judgment of Non-Infringement of Claim 3 of U.S. Pat. No. 6,246,558, filed June 15, 2006 (Doc. 232)("Motion"). The Court held a hearing on the motion on April 12, 2007. The primary issue is whether the function of and structure used in Defendant Zhejiang Dongzheng Electrical Co., Ltd.'s device are identical or equivalent to those in Claim 3 of Plaintiff Leviton Manufacturing Company, Inc.'s 6,246,558 Patent ("the '558 Patent"). Because the Court finds that Dongzheng's device does not contain identical or equivalent structure that performs the same function in substantially the

same way as the "reset contact means" and "reset means" elements of Claim 3 of the '558 Patent, Defendants Zhejiang Dongzheng Electrical Co., Ltd. ("Dongzheng"), Nicor, Inc. ("Nicor"), and Harbor Freight Tools USA, Inc. ("Habor Freight")(collectively "the Defendants"), are entitled to judgment as a matter of law on the patent infringement suit Leivton Manufacturing Company, Inc. ("Leviton") brings against them.  The Court will thus grant the Defendants' motion.

## FACTUAL BACKGROUND

Claim 3 of the '558 Patent claims certain improvements in ground fault circuit interrupter ("GFCI") technology. See Defendants' Motion for Partial Summary Judgment on Non-Infringement of Claim 3 of U.S. Pat. No. 6,246,558, Defendants' Presentation Handouts ("Defendants' Handouts"), Exhibit 1, the '558 Patent at Col. l, 13:21-52.  Dongzheng manufactures, among other things, GFCI devices that Nicor, Harbor Freight, and others distribute. See Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment of Non-Infringement of Claim 3 of U.S. Pat. No. 6,246,558 at 1, filed June 15, 2006 (Doc. 233)(" Memo").  Claim 3 of the '558 Patent reads:

> A circuit interrupting device comprising:
>
> housing means;
>
> first electrical conductive path means for conducting electricity within said
>       housing means, and capable of electrically connecting to a source of
>       electricity;
>
> second electrical conductive path means for conducting electricity within
>       said housing means, and capable of electrically connecting to at
>       least one load when electrical continuity between said first and
>       second electrical conductive path means is made;
>
> third electrical conductive path means for conducting electricity within
>       said housing means, and capable of electrically connecting to at
>       least one user accessible load when electrical continuity between
>       said first and third electrical conductive path means is made;

circuit interrupting means disposed within said housing means for breaking
electrical continuity between said first and second conductive path
means and between said first and third conductive path means, upon
the occurrence of a predetermined condition; and

reset means disposed at least partially within said housing means for
reestablishing electrical continuity between said first and second
conductive path means and between said first and third conductive
path means;

wherein said reset means comprises;

a reset button; and

reset contact means operatively associated with said reset button for activating
said circuit interrupting means by causing said predetermined condition
when said reset button is depressed.

The '558 Patent at Col. l, 13:21-52.  U.S. Patent No. 6,040,967 ("the '967 Patent"), which the '558

Patent incorporates by reference, defines "predetermined conditions" as including, "without

limitation, ground faults, arc faults, appliance leakage faults, immersion faults and a test cycle."

Defendants' Handouts, Exhibit 5, the '967 Patent at Col. ll, 2:25-27.  See the '558 Patent at Col. 1,

1:7-11.  The '967 Patent also states that the circuit interrupting device will not reset "if an open

neutral condition exists with the wiring supplying electrical power to the device. . . ."  The '967

Patent at Col. ll, 3:46-53.

Wall-mounted GFCIs typically have line-side connections that connect to the wiring in the

wall to deliver electricity to the GFCI, one or more user-accessible connections that connect to an

electrical device, such as a coffee maker, and load-side connections that can connect to other wall

receptacles.  See Memorandum Opinion and Order at 3-4, filed May 23, 2006 (Doc. 230)("May 23

MOO").  Each of the user-accessible connections has a phase terminal, from which the electrical

current flows to the electrical device, and a neutral terminal, into which the current returns from the

electrical device.  See id.

Ordinarily, the amount of current traveling from the phase terminal through an electrical device approximately equals the amount of current returning to the neutral terminal.  See id. at 3. An imbalance in this current flow is indicative of a ground fault in which the electrical current leaves its intended path -- for example, by traveling through a person.  See id.  GFCIs sense imbalance between the current leaving the phase terminal and returning to the neutral terminal. See id.  Once a GFCI senses an imbalance that reaches a certain minimum threshold, the GFCI interrupts the electrical connectivity between the line-side and user-accessible connections.  See id.  GFCIs that perform this function have been well known in the industry for over twenty years.  See id.

Historically, GFCIs have been subject to "reverse wiring."  The '558 Patent at Col. ll, 2:36-44.  Reverse wiring occurs when the person installing a GFCI attaches the line-side wires to the load-side connections and the load-side wires to the line-side connections.  See id.  Reverse wiring may compromise fault protection to the user accessible connections.  See id.

The '558 Patent claims a method of operation for a GFCI device that protects against reverse wiring by breaking electrical connectivity between the user-accessible connections and both the line-side connections and load-side connections upon the sensing of a current imbalance, referred to in the '558 Patent as the "predetermined condition."  Id. at Col. l, 5:40-61; Col. ll, 13:37-42.  To reestablish connectivity and re-energize the GFCI device after a ground fault is sensed, Claim 3 requires that the GFCI's RESET button be depressed, thereby creating a current imbalance -- the predetermined condition -- which activates the GFCI's circuit interrupting structures.  See id. at Col. l., 3:40-48; Col. l, 9:25-31.

The Defendants contend that it is undisputed that Dongzheng's GFCI does not operate in this manner.  See Memo at 2.  They assert that depressing the Dongzheng GFCI's RESET button activates separate electrical structures that are not used in the breaking of electrical connectivity, but

which are used exclusively to restore connectivity to the device.  See id. at 2-3.  In particular, depressing the RESET button on Dongzheng's GFCI device does not cause the predetermined condition, i.e., a current imbalance, that stimulates a fault and activates the circuit interrupting structures as part of the reset process.  See id. at 3.  In reaching his conclusions, Dongzheng's expert, Richard J. Moss, relied upon the drawings contained within Exhibit 5 to the deposition of Fu Wang, see Memo at 5, Memo, Exhibit 1, Declaration of Richard J. Moss, Appendix C (Fu Wang Deposition Exhibit 5), executed June 14, 2006 ("Moss Declaration"), and confirmed that these drawings were consistent with the examples of Dongzheng's devices he examined, see Moss Declaration ¶ 13, at 5.

Leviton contends that, in the claimed device, when the reset button is depressed, the reset contacts close, thereby "causing the predetermined condition," i.e., a "test cycle" to occur.  Leviton Manufacturing Company, Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment on Non-infringement of Claim 3 of U.S. Pat. No. 6,246,558, filed September 26, 2006 (Doc. 252)("Response"), Exhibit A, Declaration of Jaime De La Ree, Ph.D. ¶¶ 11-13, at 4-6 (executed September 26, 2006)("De La Ree Declaration").  See Response, Exhibit B, Rule 26 Report of Jaime De La Ree, Ph.D. ("De La Ree Report") ¶ 8, at 4.  A circuit is completed if the test passes -- i.e., there is no "open neutral condition" present.  De La Ree Report ¶ 9-10, at 4-5.  See id. at ¶¶ 18.A, 19.A, 20, at 18, 21, 24.  An "open neutral condition" refers to a condition wherein there is a discontinuity from the power source to the GFCI along the neutral line.  Response at 1 n.1.  Only when a circuit is completed if the test passes -- i.e., there is no open neutral condition present -- will then the circuit interrupting means be activated, and the device reset.  See De La Ree Report ¶¶ 9-10, 18.A, 19.A, 20, at 4-5, 18, 21, 24.  On the other hand, if an open neutral condition is present, engaging the reset contacts -- when the reset button is pressed -- would not complete a circuit.  See

id.  Thus, the test would fail, and the circuit interrupting means would not be activated.  See id.
Leviton represents that this description is also true for Dongzheng's device.  See De La Ree
Declaration ¶ 13, at 6; De La Ree Report ¶¶ 18.B, 19.B, 20, at 19, 22, 24.

The Defendants contend that Dongzheng's GFCI consists of the following basic components:
coils, magnets, springs, silicon controlled rectifiers ("SCRs"), resistors, and capacitors.  See Moss
Declaration ¶ 13, at 5.  Leviton disputes the Defendants' assertion that Dongzheng's device "consists
of" coils, magnets, springs, SCRs, resistors, and capacitors.  Response at 3.  Leviton contends that
the term "consists of," in patent law, excludes the existence of other components.  Id. at 3 n.2 (citing
Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc., 212 F.3d 1377, 1383-84 (Fed. Cir. 2000)("The
phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion.")).  Leviton
argues that, by using the term "consists of" and omitting several critical components of Dongzheng's
device, such as the diode bridge, the contacts, and the plunger, the Defendants inaccurately contend
that the accused device cannot infringe the asserted claim.  See Response at 3; De La Ree
Declaration ¶ 17, at 7-8.

The Defendants contend that each of these electrical components -- coils, magnets, springs,
SCRs, resistors, and capacitors -- was commonly used and well known at the patent's issuance date.
See Moss Declaration ¶ 13, at 5.  Leviton disputes the materiality of the Defendants' allegation that
each of the components listed was commonly used and well known.  See Response at 3.

The Defendants contend that, in Dongzheng's device, two separate coils are used:  one for
the tripping function and a separate coil for the reset function.  See Moss Declaration ¶ 13, at 5.  The
Defendants contend that, not only are two separate coils used, but instead of a mechanical latch to
hold contacts open -- as Claim 3 requires, i.e., latch member 100 -- the tension of a coil spring is
used.  See id.  In addition, the Defendants contend that, rather than using a mechanical latch to hold

the contacts in the closed position -- as Claim 3 also requires, i.e., latch member 100 -- Dongzheng's device uses a permanent magnet for this function.  See id.  Leviton disputes the Defendants' contentions about their use of "two separate coils."  Response at 3.  Leviton contends that the Defendants fail to mention that the two "separate" coils are both located around a single plunger, which acts to both trip and reset Dongzheng's GFCI.  See id.; De La Ree Declaration ¶ 10, at 5; De La Ree Report ¶¶ 17.B, 18.B, 19.B, & 20, at 16, 19, 21, & 24.

Leviton disputes the assertion that the claimed device requires mechanical latch member 100 to hold open contacts 52 and 56 in the tripped condition.  Leviton asserts that the leaf spring bias of movable contact 50 holds open , i.e., in the tripped condition, contacts 52 and 56.  See Response at 3-4 (citing the '558 Patent at Col. 1, 7:59-Col. 11, 8:13).  Leviton submits that latching finger 102 of latch member 100 serves as a back-up stop to protect against any abrupt mechanical shock that may inadvertently cause a tripped device to reset, as can occur with the Dongzheng device.  See De La Ree Declaration ¶ 16, at 7; De La Ree Report ¶¶ 19.A-19.B, at 21-22.  Thus, Leviton disputes the asserted lack of similarity between the claimed structure and Dongzheng's structure.

The result of closing the reset contacts in Dongzheng's device is the generation of an electrical signal to fire an SCR that activates a separate reset coil, which does not simulate a ground fault.  See Moss Declaration ¶ 20, at 7-8.  Leviton does not dispute this fact, but rather disputes its materiality.  See Response at 4.  Leviton contends that the material issue is whether closing the reset contacts causes a "predetermined condition," as Claim 3 requires.  Id. (citing De La Ree Declaration ¶¶ 11-12, at 4-6); De La Ree Report ¶ 20, at 24.

The Defendants contend that the structure that performs the reset function in Dongzheng's device does not contain a circuit that senses the requisite predetermined condition.  See Moss Declaration ¶ 25, at 9.  The Defendants assert that, unlike the device described in Claim 3, the

ground-fault sensing circuit in Dongzheng's device is not part of its reset structure.  See id.  The Defendants allege that, accordingly, the fault-sensing circuit and its trip coil in Dongzheng's device are not actuated or operated when the reset function is performed in the accused device.  See id. ¶ 34, at 11.  Leviton disputes the position that Dongzheng's device does not contain a circuit that senses a predetermined condition.  See Response at 4.  Leviton contends that Dongzheng's device performs a test, e.g., for an open-neutral condition, and includes a circuit that senses this test.  See id. (citing De La Ree Declaration ¶¶ 6-9, at 3-4; De La Ree Report ¶¶ 18.B, 19.B, 20, at 19, 22, 24).

The structure that performs the reset function in Dongzheng's device also does not contain the following structural elements Claim 3 requires: return spring 120, coil assembly 90, banger 94, banger dogs 96 and 98, and operable ends 116 and 118.  See Moss Declaration ¶ 24, at 9.  Leviton does not dispute that fact, but does dispute its materiality.  See Response at 4-5.  Leviton contends that the claimed and accused devices have equivalent structure that "performs the same function, in the same way, to achieve the same result."  Id. at 4 (citing De La Ree Declaration ¶ 17, at 7-8; De La Ree Report ¶¶ 11, 20, at 5, 24).  Leviton submits that both devices have reset buttons, reset contracts, SCRs, coils, plungers, and latch members to reestablish continuity between the first and second conductive path means and between the first and third conductive path means by causing a predetermined condition.  See Response at 4-5 (citing De La Ree Declaration ¶ 17, at 7-8).  Leviton argues that the predetermined condition is a test cycle, the passing of which results in a current flow to a solenoid coil, which in turn activates a critical part of the devices' circuit interrupting means, namely the plunger, to reset the device.  See Response (citing De La Ree Declaration ¶¶ 6-9, 17, at 3-4, 7-8;  De La Ree Report ¶ 20, at 24.  If the test fails because of, for example, the existence of an open-neutral condition, there is no current flow to a solenoid coil, and the plunger is not activated.  See De La Ree Declaration ¶ 17, at 7-8; De La Ree Report ¶¶ 11, 20, at 4-5, 24.

The Defendants contend that Dongzheng's device does not perform the function of "activating the circuit interrupting means" as part of resetting. Moss Declaration ¶¶ 30-31, at 10-11. Leviton disputes this allegation. <u>See</u> Response at 5. Leviton argues that the single plunger in Dongzheng's device is activated when the device is being reset, <u>i.e.</u>, the reset button is pressed and the reset coil is energized, or is being tripped. <u>See id.</u>; <u>id.</u>, Exhibit D, Deposition of Richard J. Moss at 131:1-22 (taken August 25, 2006); De La Ree Declaration ¶¶ 10, 11, at 5; De La Ree Report ¶¶ 17.B, 18.B, 19.B, and 20, at 16, 19, 22, 24. Leviton contends that the same plunger in Dongzheng's device is part of both the circuit interrupting means and the reset means. <u>See</u> De La Ree Report ¶ 20, at 24.

The Defendants contend that there is no structure in Dongzheng's device that operates in substantially the same way to achieve substantially the same result as the claimed "reset contact means," as the Court has defined that term. Moss Declaration ¶ 26, at 9-10. Leviton disputes that allegation. <u>See</u> Response at 5-6. Leviton contends that, within Dongzheng's device, reset button 60, pushes reset contact arm 61, which is spring biased, to connect electronically reset contacts 63 to each other. <u>See id.</u> (citing De La Ree Report ¶ 18.B, at 19). Leviton submits that closing reset contacts 63 causes a predetermined condition just like in the claimed device. <u>See</u> Response at 5-6 (citing De La Ree Report ¶ 18.B, at 19). Leviton argues that, thus, the way the reset contact means operates -- bringing the contacts together -- and the result of operating the reset contact means -- causing a test -- are the same for both the claimed and the accused devices. <u>See</u> Response at 5-6 (citing De La Ree Declaration ¶ 15, at 6-7).

The Defendants assert that there are no structural elements in Dongzheng's device that perform the reset function in substantially the same way as the structural elements in the claimed device, as the Court has construed that structure and function. <u>See</u> Moss Declaration ¶ 26, at 9-10.

Leviton disputes the Defendants' contention and states that the Defendants have admitted that the claimed device has the same function.  <u>See</u> Response at 6.  Leviton contends that, in both the claimed and the accused devices, when the reset contacts are closed, by pressing the reset button, a test is caused to occur.  <u>See</u> <u>id.</u> (citing De La Ree Report ¶ 20, at 24).  Leviton argues that a circuit which includes the solenoid coil that actuates the plunger senses whether the test is passed.  <u>See</u> Response at 6 (citing De La Ree Report ¶ 20, at 24; May 23 MOO at 31).  If the test passes, the solenoid coil actuates the plunger, and it engages mechanical linkages that cause the contacts along the conductive paths to make with each other to reestablish electrical continuity between the first and second conductive path means, and between the first and third conductive path means.  <u>See</u> De La Ree Declaration ¶ 17, at 7-8.  Leviton submits that, in both devices, therefore, the result is the same and the overall structure is the same.  <u>See</u> De La Ree Declaration ¶¶ 12, 17, at 6, 7-8.

## PROCEDURAL BACKGROUND

This action arises out of Leviton's assertion of infringement of Claim 3 of the '558 Patent.  Leviton alleges that the Defendants' making, distributing, selling, and offering to sell GFCI devices amounts to infringement.  <u>See</u> May 23 MOO at 2.  Claim 3 is the only claim of the '558 Patent that Leviton asserts against the Defendants.  <u>See</u> <u>id.</u>

In its May 23, 2006 Memorandum Opinion and Order, the Court determined that Claim 3's reset contact means sub-element was a means-plus function element under 35 U.S.C. § 112, ¶ 6.  <u>See</u> May 23 MOO at 27.  Specifically, the Court found that the function of the reset contact means was "to activate the circuit interrupting means by causing the predetermined condition."  <u>Id.</u> at 29.  The Court has also construed the reset means element -- "reset means disposed at least partially within said housing means for reestablishing electrical continuity between said first and second conductive path means and between said first and third conductive path means" -- as a means-plus-

function element, performing the function of reestablishing electrical connectivity between the first conductive path means and the second conductive path means, and the first conductive path means and the third conductive path means.  See id. at 28.

The Court found that the structures recited in the patent necessary to execute the reset contact means function were latch member 100, latch finger 102, movable contact arm 50, and reset contacts 104 and 106.  See id. at 29.  The Court pointed out that latch member 100 is the connecting structure between the reset button and latch finger 102.  See id. at 29 n.6.  The Court also found the following corresponding structure is necessary to perform fully the reset means function:

> reset button 30; return spring 120; latching member 100; latching finger 102; movable contact arms 50, 70; reset contacts 104, 106, 52, 62, 56, 66, 72, 82, 76, and 86; coil assembly 90, plunger 92, banger 94, banger dogs 96 and 98; operable ends 116 and 118; and a circuit that senses the "predetermined condition" and causes coil assembly 90 to actuate plunger 92.

Id. at 31.  Claim 3 thus requires that a reset button be pressed to engage reset contacts that complete a circuit which activates the circuit interrupting mechanism by causing the predetermined condition.

The Defendants move the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure and local civil rule 56.1 of the United States District Court for the District of New Mexico, for the entry of partial summary judgment on non-infringement of Claim 3 of the '558 patent.  See Motion at 1.  The Defendants base their motion upon: (i) all pleadings of record in this consolidated action; (ii) Moss' Declaration, which they filed with their motion; and (iii) their supporting memorandum. See id. at 2.

## LAW REGARDING SUMMARY JUDGMENT

The general principles that a court uses to determine a motion for summary judgment also apply to cases involving claims of patent infringement.  The movant must show that there is no genuine issue of any material fact and that it is entitled to a judgment as a matter of law.

Specifically, in a patent infringement case, the movant must show that no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee.

### 1.    General Legal Standards for Summary Judgment.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988); SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985). The court may consider only admissible evidence when ruling on a motion for summary judgment. See Ferring B.V. v. Barr Labs, Inc., 437 F.3d 1181, 1193 (Fed. Cir. 2006); World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted). See SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d at

1116.  Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).  See Celotex Corp. v. Catrett, 477 U.S. at 323-24.  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).  See London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1537-38 (Fed. Cir. 1991).  The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Id. at 322-23.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  See Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir.1996). A court must, however, look at the record in the light most favorable to the party opposing summary

-13-

judgment.  See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995), cert. denied, 116 S. Ct. 515 (1995); Smith v. Denver Pub. Sch. Bd., No. 91-1285, 1994 WL 651978, at *3 (10th Cir. November 18, 1994).

  **2.**  **Legal Standards for Summary Judgment in Patent Cases.**

  "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."  TechSearch L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002)(citing Network, LLC v. Centraal Corp., 242 F.3d 1347, 1351 (Fed. Cir. 2001)).  "Although equivalence is a factual matter normally reserved for a factfinder, the trial court should grant summary judgment in any case where no reasonable factfinder could find equivalence."  Sage Prods. v. Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir.1997). In assessing whether there has been patent infringement, a district court must determine, as a matter of law, the scope and meanings of the claim at issue and, as a matter of fact, whether the properly construed claims encompass or "read on" the accused device.  Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 879 (Fed. Cir. 1991).  "Infringement, whether literal or under the doctrine of equivalents, is a question of fact."  Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc., 62 F.3d 1512, 1520 (1995)(citing Winans v. Denmead, 56 U.S. 330, 338 (1853)).

  In patent infringement cases, as in other types of cases, a court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Mark I Mktg. Corp. v. R.R. Donnelly & Sons Co., 66 F.3d 285, 289 (Fed. Cir. 1995); Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d at 1575.  "Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential

part of the legal standard for infringement, since such failure will render all other facts immaterial."
Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001).

A "battle of the experts" may render summary judgment improper.  See Edwards Syss.
Tech., Inc. v. Digital Control Syss, Inc., 99 Fed. Appx. 911, 921 (Fed. Cir. 2004); Phillips v. Cohen,
400 F.3d 388, 389 (6th Cir. 2005).  "Where the evidence is such that no reasonable jury could
determine two elements to be equivalent, [however,] district courts are obliged to grant partial or
complete summary judgment."  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 38
n.8 (1997).

## LAW REGARDING CLAIM CONSTRUCTION

Incorporation by reference is an accepted method for defining claim terms.  Incorporation
by reference is provided for in the Code of Federal Regulations: "'Essential material' may be
incorporated by reference, but only by way of an incorporation by reference to a U.S. Patent . . .
which patent . . . does not itself incorporate such essential material by reference."  37 C.F.R. §
1.57(c).  "Essential material" is that which is necessary to describe and enable the invention so as
to fulfill the requirements of 35 U.S.C. § 112.  See 37 C.F.R. § 1.57(c)(1)-(2).

> Material not explicitly contained in the single, prior art document may still be
> considered for purposes of anticipation if that material is incorporated by reference
> into the document.  Incorporation by reference provides a method for integrating
> material from various documents into a host document -- a patent . . . -- by citing
> such material in a manner that makes clear that the material is effectively part of the
> host document as if it were explicitly contained therein.  To incorporate material by
> reference, the host document must identify with detailed particularity what specific
> material it incorporates and clearly indicate where that material is found in the
> various documents.

Advanced Display Syss., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000)(internal
citations omitted).

"An element in a claim . . . may be expressed as a means or step for performing a specified

-15-

function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.  "The literal scope of a properly construed means plus-function element does not extend to all means for performing a certain function.  Rather, the scope of such claim language is sharply limited to the structure disclosed in a specification and its equivalents."  J&M Corp. v. Harley-Davidson, Inc., 269 F.3d 1360, 1367 (Fed. Cir. 2001).

## LAW REGARDING PATENT INFRINGEMENT

A plaintiff may establish patent infringement in two ways: (i) literal infringement; and (ii) with the doctrine of equivalents.  To establish literal infringement, every limitation set forth in a claim must be in an accused product.  To prove infringement under the doctrine of equivalents, the patentee must demonstrate that the accused device contains an equivalent for each limitation not literally satisfied.

### 1.      Literal Infringement.

After the court interprets, as a matter of law, the asserted patent claims, the trier of fact determines whether the claims thus construed read on the accused product.  See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d at 1575.  "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."  Id.  "There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device."  London v. Carson Pirie Scott & Co., 946 F.2d at 1539 ("[E]ach element of a claim is material and essential, and [] in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.").

"Literal infringement of a claim with a means-plus-function clause requires that the accused device perform a function identical to that identified in the means clause."  Ishida Co., Ltd. v.

-16-

Taylor, 221 F.3d 1310, 1317 (Fed. Cir. 2000).  If the accused device performs the same function as

the claimed device, it literally infringes a claim element under § 112 ¶ 6 only if it is "insubstantially

different" from the corresponding structure in the patent specification.  See Ishida Co., Ltd. v.

Taylor, 221 F.3d at 1317.  Thus, if even one claim element is missing from the accused device, then

no literal infringement exists as a matter of law.  See id. (citing Chiuminatta Concrete Concepts, Inc.

v. Cardinal Indus., Inc., 145 F.3d 1303, 1309 (Fed. Cir. 1998)).  The "insubstantial difference"

analysis requires a court to determine "whether the 'way' the accused structure performs the claimed

function, and the 'result' of that performance, are substantially different from the 'way' the

'corresponding structure . . . described in the specification,' or its 'result' performs the claimed

function."  Ishida Co., Ltd. v. Taylor, 221 F.3d at 1317 (quoting Odetics, Inc. v. Storage Tech.

Corp., 185 F.3d 1259, 1267 (Fed. Cir. 1999)(quoting 35 U.S.C. § 112 ¶ 6)).  "Functional identity

and either structural identity or equivalence are both necessary."  Odetics, Inc. v. Storage Tech.

Corp., 185 F.3d at 1267 (emphasis in original).  In other words, to find literal infringement of a

means-plus-function clause, the corresponding structure in the accused device must carry out the

identical function using structure that is identical or equivalent to the recited, claimed structure.  See

Ishida Co. v. Taylor, 221 F.3d at 1316-17; Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.,

Inc., 145 F.3d at 1308; Odetics, Inc. v. Storage Tech. Corp., 185 F.3d at 1266-67.

        When the physical structure disclosed in a claimed "means" limitation is of minimal or no

importance to the claimed invention, there may be a broader range of equivalent structures than if

the physical characteristics of the structure are critical in performing the claimed function in the

context of the claimed invention.  See IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422,

1436 (Fed. Cir. 2000).  "[A] rigid comparison of physical structures in a vacuum may be

inappropriate in a particular case.  [Section 112 ¶ 6] requires two structures to be equivalent, but it

-17-

does not require them to be 'structurally equivalent,' i.e., it does not mandate an equivalency comparison that necessarily focuses heavily or exclusively on physical structure." Id.

> The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be equivalent under § 112, ¶ 6, thereby meeting the claim limitation.

Odetics, Inc. v. Storage Tech. Corp., 185 F.3d at 1268.

To illustrate the point, in IMS Technology, Inc. v. Haas Automation, Inc., the United States Court of Appeals for the Federal Circuit noted:

> The difference between "equivalent structures" and "structural equivalents" can be demonstrated with a simple example . . . . A claim includes part A, part B, and "means for securing parts A and B together in a fixed relationship." The written description discloses that parts A and B are made of wood and are secured together by nails. For purposes of the invention, it does not matter how parts A and B are secured; nails are not a critical part of the invention. A screw is not a nail, but for purposes of § 112, ¶ 6, it is equivalent structure in the context of the invention, though it is not the "structural equivalent" of a nail.

IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d at 1436 n. 3.

## 2.   Doctrine of Equivalents.

To prove infringement under the doctrine of equivalents, the patentee must demonstrate that the accused device contains an equivalent for each limitation not literally satisfied. See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). An element in the accused device is equivalent to a claim limitation if one of ordinary skill in the art would find the differences between the two "insubstantial." Id. at 812-13 (citing Warner-Jackson Co. v. Hilton Davis Chem. Co., 520 U.S. at 40). "Insubstantiality may be determined by whether the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d at 813

(internal quotations and citations omitted).

Under the doctrine of equivalents, there can be no infringement if even one element of a claim or its equivalent is not present in the accused device.  See Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1279 (Fed. Cir. 2001)(citing Penwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 935-36 (Fed. Cir. 1987)).  This requirement is referred to as the "all elements rule."  Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d at 1279.

"Prosecution history estoppel prevents the doctrine of equivalents from recapturing subject matter surrendered during prosecution.  The relevant legal inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter."  Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d at 813.

## ANALYSIS

The Court finds that Dongzheng's device does not contain identical or equivalent structure that performs the same function in substantially the same way as the reset contact means and reset means elements of Claim 3 of the '558 Patent.  The Court concludes that the Defendants are entitled to judgment as a matter of law on Leviton's patent infringement claim.  The Court will grant summary judgment in favor of the Defendants.

**I.     DONGZHENG'S DEVICE DOES NOT LITERALLY INFRINGE CLAIM 3 OF THE '558 PATENT.**

For Dongzheng's device to infringe literally Claim 3 of Leviton's patent, every element of the claim must be found in the accused device.  See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d at 1575; London v. Carson Pirie Scott & Co., 946 F.2d at 1539.  Additionally, because the claimed device's reset contact means and reset means elements are set forth in means-plus-function

-19-

format, literal infringement may be found only if Dongzheng's device performs the identical function as the claimed device using substantially the same structure.  See Ishida Co., Ltd. v. Taylor, 221 F.3d at 1317; Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d at 1308; Odetics, Inc. v. Storage Tech. Corp., 185 F.3d at 1266-67.  Based upon that standard, Claim 3's reset contact means and reset means elements are absent from Dongzheng's device.  Dongzheng's device neither performs the function of the reset contact means element, nor contains the claimed device's structure, or equivalent structure, corresponding to the reset contact means element.  Moreover, while Dongzheng's device performs the reset means function, it does so in a way -- i.e., with a structure -- that is more than insubstantially different than the claimed device.  Ishida Co., Ltd. v. Taylor, 221 F.3d at 1317; Odetics, Inc. v. Storage Tech. Corp., 185 F.3d at 1267.  Dongzheng's device does not therefore literally infringe Claim 3 of the '558 patent.

### A.   DONGZHENG'S DEVICE DOES NOT HAVE THE RESET CONTACT MEANS SUB-ELEMENT.

The Defendants contend that there can be no genuine dispute that Dongzheng's device does not have the reset contact means sub-element of Claim 3 of the '558 Patent.  See Memo at 13.  In its claim construction, the Court stated that the claimed device's reset contact means performs the function of "activat[ing] the circuit interrupting means by causing the predetermined condition." May 23 MOO at 29.  The Dongzheng device's reset function does not involve activating the circuit interrupting structure by causing a predetermined condition.  The structure that performs the reset function in Dongzheng's device contains no circuit that senses the requisite predetermined condition.  See Moss Declaration ¶ 25, at 9.  Unlike in the claimed device, the fault-sensing circuit and its trip coil in Dongzheng's device are not actuated or operated when the reset function is performed.  See id. ¶ 34, at 11.  The Dongzheng device's reset function instead activates a separate

-20-

and distinct reset coil.  See id. ¶ 13, at 5.  Dongzheng's device and the claimed device do not

therefore perform identical functions with respect to Claim 3's reset contact means element and thus

Dongzheng's device cannot literally infringe Claim 3 of the '558 patent.  See Ishida Co., Ltd. v.

Taylor, 221 F.3d at 1317 ("Literal infringement of a claim with a means-plus-function clause

requires that the accused device perform a function identical to that identified in the means clause.").

Leviton argues that the Defendants, in contending that Dongzheng's device does not perform

a function identical to the reset contact means, incorrectly define the term "predetermined

condition."  Response at 9.  Leviton asserts that the '558 patent incorporates by reference the '967

Patent's statement that "predetermined conditions" include "a test cycle," and that the Defendants'

position does not account for that fact.  Id.  The Court notes, however, that Leviton's expert has

previously stated that the term "test cycle," as used in both the '558 and '967 patents, is synonymous

with simulating a ground fault.  Memorandum Opinion and Order at 21-22, filed July 5, 2007 (Doc.

158 in 05cv0301).  In accordance with the Court's description of the resetting of the claimed device

in its claim construction, the Court does not believe that the "test cycle" Leviton identifies would

perform the claimed and required resetting function.  May 23 MOO at 18-21, 27-31; Response,

Exhibit C, Rule 26 Expert Witness Report of Richard J. Moss, PE ¶ 37, at 12.  The Court does not

find that the '967 patent's incorporation by reference prohibits the conclusion that Dongzheng's

device and the claimed device do not perform identical functions relating to the reset contact means

stated in Claim 3.

Setting identity of function aside, Dongzheng's device also does not literally infringe the

claimed device, because it does not contain corresponding structure, or its equivalent, necessary to

perform the reset contact means function as described in Claim 3 of the '558 Patent.  See Odetics,

Inc. v. Storage Tech. Corp., 185 F.3d at 1267 ("Functional identity and either structural identity or

equivalence are <u>both</u> necessary.")(emphasis in original).  The Court has previously determined that the following structure is necessary to complete the reset contact means function in the claimed device: latch member 100, latch finger 102, movable contact arm 50 and reset contacts 104 and 106. <u>See</u> May 23 MOO at 29.  Dongzheng's device does not contain latch member 100, latch finger 102, or moveable arm 50.  <u>See</u> Moss Declaration ¶¶ 17-18, at 7.  Nor does Dongzheng's device contain equivalents of those structural elements.  <u>See</u> <u>id.</u>  The structure within Dongzheng's device that performs the reset function does not operate in the same way as the structure in the claimed device; nor does the structure in Dongzheng's device achieve the same result as the structure in the claimed device corresponding to the reset contact means.  <u>See</u> <u>id.</u> ¶¶ 19-20, at 7-8; <u>Ishida Co., Ltd. v. Taylor,</u> 221 F.3d at 1317 (stating that "insubstantial difference" analysis requires a court to determine "whether the 'way' the accused structure performs the claimed function, and the 'result' of that performance, are substantially different from the 'way' the 'corresponding structure . . . described in the specification,' or its 'result' performs the claimed function").  Leviton does not present sufficient evidence in specific, factual form to contradict those conclusions.  In addition, Leviton's expert, Dr. Jaime De La Ree, conceded that the claimed and accused devices do not contain identical structure corresponding to the reset contact means function.  <u>See</u> Reply Memorandum of Points and Authorities in Further Support of Defendants' Motion for Summary Judgment of Non-Infringement of Claim 3 of U.S. Pat. No. 6,246,558, filed October 11, 2006 (Doc. 260)("Reply"), Exhibit B, Deposition of Jaime De La Ree at 124:1-125:25; 129:3-6 (taken August 31, 2006)("De La Ree Deposition").

The Court thus finds that Dongzheng's device does not perform the function or possess the corresponding structure, or its equivalent, of the claimed device's reset contact means sub-element. Accordingly, because Dongzheng's device does not contain every element, or its substantial

equivalent, of the claimed device, Dongzheng's device cannot literally infringe Claim 3 of the '558 Patent.  See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d at 1267 ("Functional identity and either structural identity or equivalence are both necessary.")(emphasis in original); London v. Carson Pirie Scott & Co., 946 F.2d at 1539 ("[E]ach element of a claim is material and essential, and [] in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.").

### B.   DONGZHENG'S DEVICE DOES NOT HAVE THE RESET MEANS ELEMENT.

The Court has previously construed the reset means element of Claim 3 as performing the function of reestablishing electrical continuity between the first and second conductive path means, and between the first and third conductive path means.  See May 23 MOO at 28.  The Court has also previously determined that the structure within the claimed device necessary to perform fully that function includes:

> reset button 30; return spring 120; latch member 100; latching finger 102; movable contact arms 50, 70; reset contacts 104, 106, 52, 62, 56, 66, 72, 82, 76, and 86; coil assembly 90, plunger 92, banger 94, banger dogs 96 and 98; operable ends 116 and 118; and a circuit that senses the "predetermined condition" and causes coil assembly 90 to actuate plunger 92.

Id. at 31.

Dongzheng's device does not contain latch member 100, latching finger 102, moveable contact arms 50, 70, banger 94, banger dogs 96, 98, operable ends 116, 118, return spring 120, or a circuit that senses the predetermined condition and causes coil assembly 90 to actuate plunger 92.  Nor does Dongzheng's device contain equivalents of the claimed device's structural elements corresponding to the reset means element.  See Moss Declaration ¶¶ 24-25, at 8-9; Ishida Co., Ltd. v. Taylor, 221 F.3d at 1317 (stating that "insubstantial difference" analysis requires a court to

determine "whether the 'way' the accused structure performs the claimed function, and the 'result' of that performance, are substantially different from the 'way' the 'corresponding structure . . . described in the specification,' or its 'result' performs the claimed function").

In contrast to the claimed device, when the reset contacts are closed in Dongzheng's device, an electrical signal is generated, which fires an SCR that activates a separate reset coil without simulating a ground fault. See Moss Declaration ¶ 20, at 8. A circuit that senses a predetermined condition is not present within the structure that performs the reset function in Dongzheng's device. See id. ¶ 25, at 9. The ground-fault sensing circuit in Dongzheng's device is not part of its reset means structure and does not operate when the accused device is reset. See id. Moreover, the fault-sensing circuit and its trip coil are not actuated or operated when the reset function is performed in Dongzheng's device. See id. ¶ 34, at 11. The structure within Dongzheng's device that performs the reset means function does not therefore operate in the same, or an equivalent, way as the structure corresponding to that function does in the claimed device. See id. at ¶¶ 24-25, at 8-9.

Furthermore, Leviton does not present sufficient evidence in specific, factual form to challenge those findings. Indeed, Leviton's expert conceded that Dongzheng's device does not contain several of the claimed device's structural elements. See De La Ree Deposition at 124:1-138:17; 142:4-145:11. Leviton's expert also acknowledged, in apparent agreement with the Defendants' expert, that, unlike in the claimed device, two separate coils are used in executing the trip and reset functions in Dongzheng's device. De La Ree's expert report explains that it is not the coil and related circuitry used in the tripping function that is activated and causes the plunger to actuate; rather, in Dongzheng's device, it is the coil used to reset the GFCI that is activated and causes the plunger to actuate. See De La Ree Report ¶¶ 17.B,19.B, at 16, 22. Additionally, Leviton does not specifically identify equivalent structure or provide specific evidence demonstrating

equivalent structure corresponding to the reset means element within Dongzheng's device.

Even if the Court did not find that Dongzheng's device does not function in a manner or contain structure, or its equivalent, similar to the claimed device's reset contact means, because Dongzheng's device also does not possess the corresponding structure, or its equivalent, of the claimed device's reset means element, the Court could not find, as a matter of law, that the accused device literally infringes Claim 3 of the '558 Patent.  See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d at 1267 ("Functional identity and either structural identity or equivalence are both necessary.")(emphasis in original); London v. Carson Pirie Scott & Co., 946 F.2d at 1539 ("[E]ach element of a claim is material and essential, and [] in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.").

## II.   DONGZHENG'S DEVICE DOES NOT INFRINGE CLAIM 3 OF THE '558 PATENT UNDER THE DOCTRINE OF EQUIVALENTS.

Leviton contends that, to the extent Dongzheng's device does not literally infringe Claim 3 of the '558 patent, it does infringe upon the claimed device under the doctrine of equivalents.  See Response at 19-20.  Leviton, however, does not present sufficient evidence in specific, factual form to support a finding of infringement under the doctrine of equivalents.  The only item of evidence Leviton presents to support its doctrine of equivalents argument is its expert's conclusory statement that:

> [T]he claimed circuit interrupting device and the accused device have equivalent structures (reset button, reset contacts, SCR, coil, plunger and latch) to reestablish continuity between the first and second conductive path means and between the first and third conductive path means by causing a predetermined condition, that is a test cycle, the passing of which results in a current flow to a solenoid coil, which in turn activates a critical part of the devices' circuit interrupting means, namely the plunger, to reset the device.  On the other hand, if the test is failed because, for example, of the existence of an open neutral condition, there is no current flow, and

the plunger is not activated.  Therefore, the structure of the accused device is the equivalent of the structure of the claimed device for carrying out the recited function of the reset means.

De La Ree Declaration ¶ 17, at 7-8.[1]

The Defendants contend that Leviton's assertion of infringement under the doctrine of equivalents is procedurally impermissible and that the Court should not consider any evidence which Leviton has presented in support of that assertion.  See Reply at 14.  The Defendants submit that Leviton did not, before its response to their summary judgment motion, provide analysis or notice, either in its expert report or contention interrogatories, regarding a doctrine of equivalents claim.  See id. 13-14.  The Court agrees that Leviton did not provide such analysis or notice.  See id., Exhibit C, Plaintiff's Second Supplemental Responses to Zhejiang Dongzheng Electrical Co., Ltd's First Set of Interrogatories (Interrogatory Nos. 2 through 7); De La Ree Report.  The Court believes, however, that it can find in favor of the Defendants on the doctrine of equivalents issue without barring from consideration ¶ 17 of De La Ree's Declaration pursuant to rule 37(c)(1) of the Federal Rules of Civil Procedure.  The Court will thus consider the evidence Leviton has put forth in support of its doctrine of equivalents claim.

To prove infringement under the doctrine of equivalents, Leviton must demonstrate that Dongzheng's device contains an equivalent for each limitation not literally satisfied.  See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d at 812.  An element in an accused device is equivalent to a claim limitation if one of ordinary skill in the art would find the differences between the two "insubstantial."  Id. at 812-13.  "Insubstantiality may be determined by whether the accused

---

[1] The Court previously determined that it would not consider the March 27, 2007 Supplemental Declaration of Jaime De La Ree, which provided a more particularized assessment of infringement under the doctrine of equivalents, in deciding this motion for summary judgment.  See Memorandum Opinion and Order at 2, 15, filed April 20, 2007 (Doc. 323).

device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." Id. at 813.  The statement of De La Ree upon which Leviton relies to support its doctrine of equivalents claim appears to address the function and result aspects of the insubstantiality test, but it does not address the substantially the same way aspect.  See De La Ree Declaration ¶ 17, at 7-8.  Moreover, Leviton and De La Ree do not support that statement with particularized identifications of equivalent function, structure, and result; nor do they support the statement with specific analysis.  Further, De La Ree testified at his deposition that Dongzheng's device and the claimed device produce the same outputs in different ways.  See De La Ree Deposition at 129:3-6; 138:15-17.  The Court does not believe that, based upon specific, factual evidence, Leviton has demonstrated that a genuine issue of material fact exists whether Dongzheng's device infringes upon Claim 3 of the '558 patent under the doctrine of equivalents.

Additionally, Leviton does not address identity of function with respect to the reset contact means sub-element.  Paragraph 17 of the De La Ree Declaration references the reset means only. See De La Ree Declaration ¶ 17, at 7-8.  Under the doctrine of equivalents, there can be no infringement if even one element of a claim or its equivalent is not present in the accused device. See Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d at 1279.  Leviton has not presented evidence sufficient to show that Dongzheng's device contains an equivalent of the reset contact means sub-element.  Even if the Court were satisfied that Leviton had submitted sufficient specific evidence that Dongzheng's device satisfied the asserted reset means element, which the Court is not, according to the all elements rule, the Court still could not find infringement under the doctrine of equivalents, because there has been no showing that the reset contact means sub-element is present in the accused device for purposes of the doctrine of equivalents.  See id.

The Court therefore concludes, as a matter of law, that Dongzheng's device does not infringe

Claim 3 of the '558 patent under the doctrine of equivalents.

There is no genuine issue of material fact that Dongzheng's device does not infringe Claim 3 of the '558 Patent, either literally or under the doctrine of equivalents.  Dongzheng, Nicor, and Harbor Freight are therefore entitled to summary judgment of non-infringement.

**IT IS ORDERED** that the Defendants' Motion for Partial Summary Judgment of Non-Infringement of Claim 3 of U.S. Pat. No. 6,246,558 is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

R.E. Thompson
Emil Kiehne
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

-- and --

Paul J. Sutton
Barry G. Magidoff
Joseph M. Manak
Barry J. Schindler
Michael A. Nicodema
Deepro R. Mukerjee
Greenberg Taurig, L.L.P.
New York, New York

-- and --

James Taylor Hosmer
Nixon & Vanderhye PC
Arlington, VA

*Attorneys for the Plaintiff*

Alberto A. Leon
Bauman, Dow & Leon, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant Nicor, Inc.*

J. Douglas Foster
Foster & Reider, P.C.
Albuquerque, New Mexico

-- and --

Bryan G. Harrison
John P. Fry
Morris, Manning & Martin, L.L.P.
Atlanta, Georgia

      *Attorneys for Defendant Zhejiang Dongzheng*
        *Electrical Co., Ltd.*

DeWitt M. Morgan
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Mark J. Rosenberg, P.C.
Sills, Cummis, Epstein & Gross, P.C.
New York, New York

      *Attorneys for Defendant Harbor Freight Tools, USA*